T.C. Memo. 2004-277


UNITED STATES TAX COURT


LINDA MITCHELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17155-02.               Filed December 8, 2004.


Linda Mitchell, pro se.

<u>Michael W. Lloyd</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HAINES, <u>Judge</u>:  Respondent determined that petitioner is not entitled to abatement of the interest due with respect to her income tax liability for 1994 pursuant to section 6404(e).[1]  The only issue for decision is whether respondent abused his

_____

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code, as amended.  Amounts are rounded to the nearest dollar.

discretion in failing to abate the assessment of interest with respect to petitioner's 1994 tax year.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. On the date the petition was filed, petitioner resided in Aurora, Colorado.

Petitioner is a tax return preparer and has prepared tax returns since 1990.

Petitioner and her spouse, Hamidou Diarra (Mr. Diarra), timely filed a 1994 Federal income tax return with a filing status of "Married filing joint return." On February 26, 1997, respondent issued a notice of deficiency for 1994 determining a deficiency of $8,919 and an accuracy-related penalty under section 6662(a) of $1,784. Petitioner filed a petition with the Court disputing the notice of deficiency. Respondent assessed the deficiency on Mr. Diarra using nonmaster file procedures because Mr. Diarra did not petition the Court.[2]

During the course of the trial, the parties reached a settlement. Respondent recited the terms of the settlement on

---

[2] Nonmaster file accounts are created as a routine matter when an action is taken that affects only one spouse on an account that originally is on a master file jointly; i.e., only one spouse petitions the Court. 4 Administration, Internal Revenue Manual (CCH), secs. 8.17.3.1.5 and 8.17.3.1.6 at 27,802 and 27,803.

the record.  The Court specifically asked petitioner whether she

agreed to settle the case on the recited basis, and petitioner

agreed as follows:

> MR. LOPATA [Respondent's counsel]:  Good morning, Your
> Honor.  I'm happy to say that we have reached a basis of
> settlement in this case, and we would like to read that
> basis into the record at this time.

> THE COURT:  That's fine.  After you do that, I'll --
> Ms. Mitchell, I'll ask you if you agree to settle the case
> on the basis that he has stated.

> MS. MITCHELL:  All right.

> *     *     *     *     *     *

> MR. LOPATA:  * * * I believe that summarizes our basis
> for settlement of this case, Your Honor.

> THE COURT:  That covers all the issues that have been
> in dispute?

> MR. LOPATA:  I believe so, Your Honor.

> THE COURT:  Ms. Mitchell, do you agree to settle the
> case on that basis?

> MS. MITCHELL:  Yes, I do.

The Court ordered that the parties provide the Court with a

decision document reflecting the settlement by May 21, 1998.

Petitioner and respondent met in early June 1998, to review

the settlement computations.  After petitioner failed to return

the decision document to respondent, respondent called petitioner

on September 9, 1998, to arrange a meeting for September 14,

1998.  At the meeting, petitioner refused to sign the stipulation

and decision documents even though petitioner agreed that the

computations and decision document accurately reflected the settlement agreed to at the trial. Petitioner indicated that she was dissatisfied with the settlement and wished to reopen the negotiations and present additional information in an attempt to reach a more beneficial settlement.

On September 22, 1998, respondent filed a motion for entry of decision with the Court. Petitioner did not file an objection to the motion. On November 4, 1998, the Court entered an order and decision that, as relevant in this case, there was a deficiency of $7,269 and a penalty due pursuant to section 6662(a) of $1,454, for 1994.

On February 19, 1999, respondent assessed the deficiency and penalty using nonmaster file procedures for petitioner's account and adjusted Mr. Diarra's nonmaster file account to be in line with petitioner's deficiency and penalty. Respondent sent petitioner and Mr. Diarra notices reflecting these account adjustments.

On April 5, 1999, respondent sent petitioner a fourth notice demanding payment of the outstanding tax, penalty, and interest.

On May 3, 1999, petitioner paid $4,944 toward the 1994 deficiency and penalty. On May 5, 1999, the account was turned over to respondent's collection branch for active enforcement of collection procedures because it was a delinquent account without a formalized installment agreement.

On August 10, 1999, respondent determined petitioner and Mr. Diarra's account to be "currently-not-collectible" (53 status), suspending the enforced collection. While a case is in 53 status, respondent sends a bill to the taxpayer once a year with the balance on the master and nonmaster file accounts.

On April 15, 2001, and 2002, respondent applied petitioner's overpayments of $179 and $329 on her 2000 and 2001 tax returns, respectively, to the 1994 tax deficiency and penalty. On March 18, 2002, petitioner made a payment of $2,146 to the 1994 tax deficiency and penalty.

On November 12, 2001, respondent received from petitioner a Form 843, Claim for Refund and Request for Abatement, in which she requested that all accrued interest on the 1994 deficiency be abated. Petitioner provided the following explanation as to why she believed the claim should be allowed:

> We are asking that this claim be allowed because the amount owed is for interest and penalty that was the result of an audit from 1995. After paying the tax obligation, we did not realize that interest and penalty were accruing.
>
> I contacted the Internal Revenue Service on several occasions and was told that there was nothing outstanding for tax year 1994. A reminder notice dated 08/20/2001 * * * was received and we responded accordingly. After receiving a reminder notice * * * dated September 3, 2001, I called the Taxpayer Advocates [sic] office. The representative explained to me why we received the reminder notices. However, he said that our obligation was paid in full for tax year 1994. The notice was for interest and penalty only.
>
> We have always had financial problems, but lately, we are having serious financial problems. We are over extended as

a result of borrowing money to pay 1992, 1993 and 1994 tax obligations.  There were other loans made for various reasons which has causes [sic] us not to qualify for additional credit.

As explained above, please abatement [sic] the interest and penalty for tax year 1994.  We do not have the ability to pay.  Bottom line, we are struggling financially.

We are responsible individuals and would like to have our income tax records free and clear of outstanding obligations.

On March 7, 2002, respondent sent petitioner and Mr. Diarra a letter that their claim was fully disallowed.  The letter stated:

The information you provided does not establish that any interest is due to an error or unreasonable delay relating to the performance of a ministerial act by an officer or employee of the Internal Revenue Service.

A review of our records shows that an examination assessment was made on your 1994 tax account.  A letter was sent advising you of your legal rights to petition the United States Tax Court if you disagreed with our tax change.  Our records show that Linda Mitchell petitioned the tax court, but we have no record that Hamidou Diarra chose to petition.

The IRS has a legal period in which to charge additional tax on your Form 1040.  To protect our assessment against Hamidou Diarra, we made the assessment against him only on June 16, 1997.  The legal period to assess against Linda Mitchell was extended while waiting for the tax court decision.  Because the court decision resulted in a smaller amount of tax and penalty charges, we reduced the charges against Hamidou Diarra (as shown in our notice of adjustment dated February 11, 1999), to equal the same tax and penalty charges of $8,723.00 assessed against Linda Mitchell on February 19, 1999.  Separate notices are issued because of the separate accounts.  However, we will only collect the assessment of $8,723 [1994 deficiency of $7,269 plus penalty of $1,454] once (plus applicable penalty and interest charges).

On October 7, 2002, respondent issued to petitioner a Full Disallowance-Final Determination, disallowing petitioner's request for an abatement of interest.  Respondent denied the request on the basis of the following:

> We did not find any errors or delays relating to the performance of a ministerial act by an IRS employee.  The law allows for possible interest abatement only when there is an error or delay caused by an IRS employee in performing a ministerial act, which is defined as a procedural or mechanical act that does not involve the exercise of judgment or discretion.  In your claim and in your appeal letter, you requested abatement of all the assessed interest on the 1994 tax account.  You did not contend that there was any error or delay by the IRS in the process of assessing the additional tax liability on the 1994 tax account.  You simply stated that you thought you had full paid the amount of additional tax liability due, and that once the tax liability was paid, you understood that the assessed interest amount could be negotiated for abatement.  You then explained that you have financial problems and requested that the assessed interest be abated due to your inability to pay.  However, a review of the requirements of the law [IRC section 6404(e)] reveals that interest assessed on the tax account cannot be abated unless the specific requirements of the law are met.  There is no provision in this law to negotiate the amount of interest due required by the law or to consider reasons of 'inability to pay'.  Therefore, your claim for interest abatement cannot be allowed.

On October 28, 2002, petitioner filed a Petition for Review of Failure to Abate Interest Under Code Section 6404 with the Court disputing respondent's determination.

                              OPINION

Section 6404(e)(1) provides that the Commissioner may abate the assessment of interest on payment of tax to the extent a delay in such payment is attributable to any error or delay by an

officer or employee of the Internal Revenue Service in performing a ministerial act.[3]  Section 301.6404-2(b)(2), Proced. & Admin. Regs.,[4] defines a "ministerial act" as:

> a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place.  A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act.

The Court may order abatement if the Commissioner abuses his discretion by failing to abate interest.  Sec. 6404(h)(1).[5]

---

[3]  The Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996), amended sec. 6404(e) to permit abatement of interest for "unreasonable" error and delay in the performance of a "ministerial or managerial" act.  The amendments to sec. 6404(e) apply to interest accruing with respect to deficiencies or payments for taxable years beginning after July 30, 1996.  See TBOR 2 sec. 301(c), 110 Stat. 1457. Thus, the amendments do not apply to the instant case.  See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

[4]  The quoted language from sec. 301.6404-2(b)(2), Proced. & Admin. Regs., is identical to the language of sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), which was in effect for 1994.  Sec. 6232(a) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA 1988), Pub. L. 100-647, 102 Stat. 3734, added subsec. (e) to sec. 7805. Sec. 7805(e)(2) provides that "Any temporary regulation shall expire within 3 years after the date of issuance of such regulation."  Sec. 7805(e)(2) applies to any temporary regulation issued after Nov. 20, 1988.  TAMRA 1988 sec. 6232(b), 102 Stat. 3735.  The regulation herein involved was issued before Nov. 20, 1988, and thus the "sunset" provision of sec. 7805(e)(2) does not apply to this regulation.  In order to avoid confusion, we refer to this regulation using its current designation, sec. 301.6404-2(b)(2), Proced. & Admin. Regs.

[5]  Formerly, sec. 6404(g), applicable to requests for abatement after July 30, 1996.  TBOR 2 sec. 302, 110 Stat. 1457 (1996).

Petitioner presents in her claim alternative arguments as to why interest on the 1994 tax deficiency should be abated. These arguments are lack of knowledge that interest was accruing and inability to pay. Petitioner's arguments fail on the basis of the record.

## Lack of Knowledge

Petitioner argues that she thought that she needed to pay only the deficiency and penalty determined in the decision document and that she did not know to look at her nonmaster file account to know that there was interest assessed. Interest on a Federal income tax liability generally begins to accrue from the last date prescribed for payment of that tax and continues to accrue, compounding daily, until payment is made. See secs. 6601(a), 6622(a). Petitioner, a tax return preparer by profession, admitted at trial that she knew that interest accrues on unpaid taxes. Therefore, petitioner's lack-of-knowledge argument must fail.

Petitioner's nonmaster file transcript reports that petitioner received four notices regarding the balances in her account, including accrued interest. The Appeals officer testified that, even when petitioner's account was in 53 status, petitioner would have still received an annual notice reflecting the 1994 balance due. Petitioner's claim that she had no knowledge of the accrued interest fails on the basis of the

evidence on the record and does not constitute an error or delay caused by respondent in performing a ministerial act.

Inability To Pay

Petitioner also argues that she is struggling financially and unable to pay the accrued interest. First, the taxpayer's inability to pay is not a condition that would allow the Secretary to abate the interest assessment as it does not involve a ministerial act of respondent. See sec. 6404(e); sec. 301.6404-2(b)(2), Proced. & Admin. Regs. Second, at trial, petitioner contradicted herself by disputing the alleged inability to pay and questioned why her account was placed in 53 status because she had been paying off the 1994 deficiency and penalty; we can infer from her questioning that she does have the ability to pay.[6] We interpret petitioner's argument to arise out of her confusion as to respondent's classification of her account with 53 status.

An account may be placed in 53 status for a variety of reasons. See 2 Administration, Internal Revenue Manual (CCH), sec. 5.16.1.1 at 17,803. At trial, the Appeals officer testified that it appeared that petitioner's account was reported as 53

---

[6] At trial, petitioner testified to the following: "I demonstrated an ability to pay when I paid the other prior things, the prior bills in the order and decision from the Court."

status because the collection branch did not have the manpower to pursue actively the amounts.

We note that once an account is placed in 53 status, the Commissioner is required to advise the taxpayer: (1) If the taxpayer's financial condition changes, payment of the tax may be warranted; (2) any refunds on future Federal tax returns will be applied to the outstanding liability; (3) interest and penalty will continue to accrue on the account; and (4) an annual notice will be sent reminding the taxpayer of the balance due. 2 Adminstration, Internal Revenue Manual (CCH), sec. 5.19.1.6.1.7 at 18,299-119. We further note that the period of limitations for collection has not expired. See sec. 6502(a). Although respondent reported petitioner's account as 53 status, respondent is still able to collect the balance from petitioner.

There is no evidence that the accrual of interest was attributable to respondent's error or delay in performing a ministerial act. The fact is that petitioner is not entitled to abatement of the interest because petitioner caused the delay by not paying the full amount when due. As a result, we hold that respondent did not abuse his discretion in failing to abate the assessment of interest.

In reaching our decision, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.